## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RORY A. BUDMAN,** | : | **No. 3:13cv1034** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| **Acting Commissioner** | : | |
| **of Social Security,** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the court for disposition is Magistrate Judge Thomas M. Blewitt's report and recommendation (hereinafter "R&R"). The R&R proposes denying Plaintiff Rory A. Budman's Social Security appeal. Plaintiff has filed objections to the R&R, and they are ripe for disposition.

## BACKGROUND

On January 20, 2010, Plaintiff Rory A. Budman (hereinafter "plaintiff") filed an application for disability insurance benefits due to various physical and mental impairments, including neuropathy, depression, alcoholism, and a back condition.[1]  (Doc. 9-5, Admin. R. (hereinafter "R.")

---

[1] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid Social Security taxes.  42 U.S.C. §§ 415(a).  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  See 42 U.S.C. § 416(i)(2).  Here, the record establishes that Plaintiff met the Social Security Act's insured status requirement.  (R. at 71).

at 69, 74).[2]  In the application, plaintiff alleged his disability began on
January 2, 2008.  (Id.)  On June 29, 2010, the Bureau of Disability
Determination denied plaintiff's application.[3]  (R. at 64).  Plaintiff then filed a
request for a hearing before an  Administrative Law Judge (hereinafter
"ALJ").

   The ALJ held a hearing on October 7, 2011.  (R. at 35-63).  At the hearing, the
ALJ noted that plaintiff  was forty-two (42) years old on the alleged disability
onset date and forty-six (46) years old on the date of the hearing.  (R. at
77).  Plaintiff is high school educated and can read, write, speak and
understand the English language.  (R. at 74, 77).  Plaintiff testified that he
suffers from neuropathy (lower extremities), depression, alcoholism and a
back condition, which cause extreme physical pain, short-term memory
loss, difficulty with concentration, and anxiety.  (R. at 42, 72).

        Plaintiff lives in a two-story house and testified that he walks up and
down the stairs an average of twelve (12) times per day.  (R. at 43).  Plaintiff
stated that he is able to lift up to forty (40) pounds, he could stand for 10-15
minutes, sit for 30-45 minutes, and walk up to one block.  (R. at 43, 45).
Plaintiff is able to perform household chores, care for his daughter and
various pets, and prepare simple meals.  (R. at 42).   Plaintiff claims that he

---

[2]  References to "R. at __" are to pages of the administrative record filed by
the Defendant as part of his Answer on July 10, 2013.

[3]  The Bureau of Disability Determination is an agency of the state which
initially evaluates applications for disability insurance and SSI benefits on
behalf of the Social Security Administration.  (R. at 205-06).

has been treated for migraines since he was fourteen years old.  (R. at 46).

He reports that he suffers from seizures 8-10 times a week that last from a

few seconds to a few minutes.  (R. at 74).  Finally, while plaintiff suffers from

anxiety, he has not received any mental health counseling.  (R. at 41, 52).

The ALJ stated that plaintiff has past relevant work as an electrician

and a spray painter.[4]  (R. at 77).  A vocational expert testified that plaintiff's

past work is classified as ranging from light to heavy in exertional

requirements and semi-skilled in nature.  (Id.)  Plaintiff testified that he has

not worked since the alleged disability onset date of January 2, 2008.  (R. at

74).

On December 22, 2011, the ALJ issued a decision denying plaintiff's

application for disability insurance benefits finding that plaintiff could

perform a narrow range of light work treated as sedentary.[5]  (R. at 73).

---

[4]  "Past relevant work" means work plaintiff performed during the fifteen
years prior to the date his claim for disability was adjudicated by the
Commissioner.  20 C.F.R. §§ 404.1560(b)(1) and 404.1565.

[5]  "Sedentary work" is defined in the regulations of the Social Security
Administration as follows:

> (a) Sedentary work. Sedentary work involves lifting no
> more than 10 pounds at a time and occasionally lifting or
> carrying articles like docket files, ledgers, and small tools.
> Although a sedentary job is defined as one which involves
> sitting, a certain amount of walking and standing is often
> necessary in carrying out job duties. Jobs are sedentary if
> walking and standing are required occasionally and other
> sedentary criteria are met.

Plaintiff timely requested the Appeals Council review the ALJ's decision. (R. at 6).  On March 22, 2013, the Appeals Council denied plaintiff's request for review.   (R. at 1).  Thus, the ALJ's decision stood as the Commissioner of Social Security's (hereinafter "Commissioner") final decision.[6]

As a result of the Commissioner's denial of disability insurance benefits, plaintiff filed an appeal in this court on April 19, 2013.  Plaintiff's appeal was assigned to Magistrate Judge Thomas M. Blewitt for the issuance of a report and recommendation.  On December 19, 2013 Magistrate Judge Blewitt recommended denying plaintiff's appeal.  (Doc. 15).  Plaintiff filed objections to the recommendation (Doc. 16) bringing the appeal to its present posture.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal.  See  42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final

---

20 C.F.R. § 404.1567(a).

[6]   The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless a claimant files an action in federal district court within 60 days after receiving notice of the Appeals Council's action.  20 C.F.R. § 404.981.

determinations under section 405 of this title."); see also  42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.  Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of Review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a de novo determination of those portions of the report against which objections are made.  28 U.S.C. § 636(b)(1)(c); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987).  This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  Id.  The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.  Id.

In reviewing a Social Security appeal, the court must determine whether "substantial evidence" supports the ALJ's decision.  See 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The United States Supreme Court has defined "substantial evidence" as "such relevant

5

evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating that courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001) (indicating that when an ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently).  In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971).

6

"When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)).  The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008).  Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole.  Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any **substantial gainful activity** by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).  An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance and supplemental security income claims with a five-step sequential analysis.  20 C.F.R. §§

404.1520(a)(4).  This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[7] (2) has an impairment, or combination of impairments, that is severe,[8] (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment,"[9] (4) has the "residual functional capacity" to return to his or her past work and (5) if not, whether he or she

---

[7]  "Substantial gainful activity" is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. §§  404.1510. If the claimant is engaging in "substantial gainful activity", the claimant is not disabled and the sequential evaluation proceeds no further.

[8]  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test.  20 C.F.R. §§ 404.1520(c).  If a claimant does not have an  impairment or combination of impairments which significantly limits his physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. §§ 404.1520(d)-(g).  An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal.  Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl and handle. 20 C.F.R. § 404.1545(b).

[9]  A "listed impairment" is one that appears on the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work."  Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (stating the listing of impairments). If the claimant has an impairment, or combination of impairments, that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

8

can perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v).  Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity.[10]  20 C.F.R. §§ 404.1520(a)(4)(iv).

Residual functional capacity (hereinafter "RFC") is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See SSR 96-8p, 1996 WL 374184.  A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  Id.  The RFC assessment must include a discussion of the individual's abilities.  Id.; 20 C.F.R. §§ 404.1545; Fargnoli, 247 F.3d at 40 (defining RFC as that which an individual is still able to do despite the limitations caused by his or her impairment(s)).

**Discussion**

Magistrate Judge Blewitt recommends that we affirm the ALJ's decision denying benefits.  The ALJ found that plaintiff was not disabled because his impairments did not limit his ability to engage in substantial employment that exists in the national economy.  Therefore, the court will briefly discuss the ALJ and Magistrate Judge's decisions and then address plaintiff's specific objections thereto.

---

[10]  If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

### A. The ALJ's Decision

The ALJ assessed plaintiff's disability claim pursuant to the five-step sequential analysis.  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his disability onset date of January 2, 2008.  (R. at 71).  At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of bilateral knees; PVD bilateral lower extremities, peripheral neuropathy; partial deafness in the left ear; alcohol dependance; mood disorder; depressive disorder; antisocial and dependent personality disorder; post traumatic stress disorder; and attention deficit hyperactivity disorder.  (Id.)  The ALJ found that plaintiff's impairments cause more than minimal limitations on his ability to perform basic work related activities and are therefore severe.  (Id.)  At step three, however, the ALJ concluded that plaintiff's impairments failed to meet or equal a listed impairment.  (Id.)

Prior to addressing step four, the ALJ determined that plaintiff retained the residual functional capacity (hereinafter "RFC") to perform a narrow range of sedentary light work.  (R. at 73).  In setting the RFC, the ALJ stated that the objective medical evidence did not support plaintiff's statements concerning the intensity, persistence, or limiting effects of his impairments. (R. at 74).

At step four, the ALJ recognized that plaintiff was unable to perform any of his past relevant work.  (R. at 77).  The ALJ found, however, that

plaintiff was capable of making a vocational adjustment to other work that exists in significant numbers in the national economy but has limitations that necessitate being limited to sedentary, unskilled work.[11] (Id.) Finally, based on plaintiff's age, education, work experience, and RFC, the ALJ at step five stated that plaintiff had the ability to perform the following sedentary, unskilled work: assembler of small parts; sorter/clerk; and surveillance system monitor. (R. at 78). The ALJ also stated that there existed a significant number of such jobs in the regional and national economies. (Id.) Thus, the ALJ determined that plaintiff was not disabled.

### B. The Magistrate Judge's Recommendation

As previously stated, plaintiff appealed the Commissioner's denial of benefits to this court. Plaintiff's appeal was assigned to Magistrate Judge

---

[11] "Unskilled work" is defined in the regulations of the Social Security Administration as follows:

> (a) Unskilled work. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a).

Blewitt who recommends denying plaintiff's appeal because the ALJ's determination that plaintiff is not disabled is supported by substantial evidence.

Plaintiff filed several objections to the Magistrate Judge's report and recommendation.  Specifically, plaintiff argues that the Magistrate Judge erred by: (1) "selectively omitting" portions of plaintiff's testimony when summarizing the ALJ's credibility analysis; (2) determining that objective medical evidence supported the ALJ's finding that plaintiff is capable of performing gainful employment; (3) affirming the ALJ's decision that plaintiff's physical and mental impairments were not severe enough to meet or equal one of the listed impairments;[12] (4) failing to afford greater weight to the opinions of Dr. Hauck and Dr. Sallade regarding plaintiff's mental health condition; (5) finding that the ALJ properly considered plaintiff's left knee condition and plaintiff's potential need for knee replacement surgery in his assessment of plaintiff's physical impairments; (6) improperly affording weight to the statement of Matthew W. Reish, M.D. (hereinafter "Dr. Reish"), one of plaintiff's treating physicians, that a medication injection to plaintiff's knee provided plaintiff relief from pain; (7) asserting that the ALJ correctly determined plaintiff was capable of performing sedentary work; (8) finding

---

[12]  Plaintiff presents this argument in his third, fifth, sixth and seventh objections, regarding Listings 12.00, *et seq*. for mental impairments, 1.00, *et seq*. for musculoskeletal system impairments, and 11.14 for neurological impairments and peripheral neuropathies. For the sake of clarity, the court will consolidate these arguments under one heading and will address plaintiff's objection as it pertains to each Listing criteria.

that the ALJ's decision regarding plaintiff's RFC is supported by substantial evidence; and (9) concluding that the ALJ's hypothetical question posed to the vocational expert was valid. The court will address each of plaintiff's objections in turn.[13]

### 1. The ALJ's Credibility Determination[14]

The Magistrate Judge recommends affirming the ALJ's credibility determination pertaining to plaintiff's subjective complaints.  The ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, however, plaintiff's statements regarding the intensity, persistence, or limiting effects of his impairments lacked credibility.  Plaintiff argues that the ALJ improperly discounted his credibility and that the magistrate judge "selectively omitted" portions of his testimony.  After careful review, we agree with the Magistrate Judge.

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered when the disability determination turns on an assessment of the level of a claimant's pain. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to

---

[13]  Because plaintiff's objections address similar legal issues, we will discuss them *in seriatim* to the extent that they present distinct issues.

[14]  This section addresses plaintiff's arguments contained within his first, eighth and twelfth objections.

work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Cases involving

an assessment of subjective reports of pain "obviously require the ALJ to

determine the extent to which a claimant is accurately stating the degree of

pain or the extent to which he or she is disabled by it."  Id.

The Social Security statute and regulations guide the ALJ's

assessment of subjective reports of pain.  This guidance eschews wholly

subjective assessments of a claimant's pain.  Instead, at the outset, the ALJ

is admonished that:

> [a]n individual's statement as to pain or other symptoms shall
> not alone be conclusive evidence of disability as defined in
> this section; there must be medical signs and findings,
> established by medically acceptable clinical or laboratory
> diagnostic techniques, which show the existence of a medical
> impairment that results from anatomical, physiological, or
> psychological abnormalities which could reasonably be
> expected to produce the pain or other symptoms alleged and
> which, when considered with all the evidence . . . , would lead
> to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5) (A).

Applying this statutory guidance, the Social Security Regulations

provide a framework under which a claimant's subjective complaints are to

be considered.  See 20 C.F.R. § 404.1529.  Under these regulations,

symptoms, such as pain, shortness of breath, and fatigue, will only be

considered to affect a claimant's ability to perform work activities if such

symptoms result from an underlying physical or mental impairment that has

been demonstrated to exist by medical signs or laboratory findings.  20

C.F.R. § 404.1529(b).  Once a medically determinable impairment which

14

results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work.  Id.  In so doing, the medical evidence of record is considered along with the claimant's statements.  Id.

In the instant case, plaintiff reported severe pain and symptoms caused by his mental and physical impairments.  Plaintiff testified that he: (1) frequently suffers debilitating migraine headaches; (2) experiences severe short-term memory loss; and (3) has extreme pain in his left knee which limits his ability to walk and stand.  (R. at 46-50).  The objective medical evidence, however, fails to support plaintiff's complaints of severe mental and physical impairments.

The ALJ first determined that plaintiff's allegations of migraines and short-term memory loss were inconsistent with the reports of his treating physicians as well as the objective diagnostic test results.  Spcifically, an MRI of plaintiff's brain performed in 2011 found no acute abnormalities.  (R. at 28, 72).  Additionally, the ALJ found no objective medical evidence that these conditions actually cause functional limitations regarding plaintiff's ability to perform work related activities.  (R. at 72).

The ALJ also found that plaintiff's statements regarding leg pain were inconsistent with the objective medical evidence.  A venous duplex test performed on plaintiff's legs in January of 2010 was normal, establishing no evidence of deep or superficial venous thrombosis in plaintiff's legs.  (R. at 216).  An MRI of plaintiff's right knee in February of 2011 established an

15

ACL strain, but no evidence of a tear, and minimal fraying of his meniscus, but no other acute abnormality.  (R. at 29).[15]

Moreover, the ALJ found plaintiff's statements regarding the necessity of knee replacement surgery were inconsistent with the findings of Dr. Reish.  After examining plaintiff, Dr. Reish recommended against surgery stating, "I think he would be made worse with an ACL reconstruction."  (R. at 400).  Dr. Reish instead treated plaintiff with a medication injection, noting that plaintiff received pain relief from an injection.  (Id.)

After careful review of the record as a whole, we will adopt the Magistrate Judge's recommendation on this issue.  The ALJ properly determined that the evidence as a whole contradicted plaintiff's subjective claims of disabling mental and physical limitations and her finding that plaintiff was not fully credible was supported by substantial evidence.  (R. at 42-43, 156-57); see also Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003) (citing Atl. Limousine, Inc. v. N.L.R.B., 243 F.3d 711, 718 (3d Cir. 2001) (stating that the ALJ's determination regarding plaintiff's credibility should be afforded great deference).

---

[15]  The only test that established a significant issue was an MRI of plaintiff's left knee in January of 2011 reflecting severe osteoarthritic changes to the medial femorotibial compartment, mild to moderate changes in the lateral compartment, and a complete ACL tear.  (R. at 75).  In March 2011, however, plaintiff's treating orthopedist Charles L. Cole, Jr., M.D., found that plaintiff's left knee had "excellent motion," and determined that plaintiff was not in enough pain to warrant a knee replacement.  (R. at 352).

### 2.  ALJ's Residual Functional Capacity Assessment[16]

The Magistrate Judge also recommends denying plaintiff's appeal regarding the ALJ's determination that plaintiff has the residual functional capacity to perform a narrow range of light sedentary work.  Plaintiff contends that substantial  evidence does not support the ALJ's assessment that he is capable of performing sedentary work for two reasons.  First, plaintiff claims the ALJ improperly rejected the opinion of plaintiff's treating physician, John H. Persing, M.D. (hereinafter "Dr. Persing").  Second, plaintiff argues that no objective medical evidence supports the ALJ's RFC assessment.   After careful review, we agree with the Magistrate Judge.

### A. Dr. Persing's opinion

Plaintiff first argues that the ALJ failed to assign the greatest weight possible to his treating physician's opinion.  The Third Circuit Court of Appeals recognizes that the "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli, 247 F.3d at 43; see also Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008).  A treating physician's report should be accorded great weight "when the opinion reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Pododworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984); 20 C.F.R. §

---

[16]  This section addresses plaintiff's second, fifth, eighth, ninth, tenth, eleventh and thirteenth objections.

404.1527(c)(2)(I).

The treating source's opinion is entitled to controlling weight, however, "only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . .'" Johnson, 529 F.3d at 202 (quoting 20 C.F.R. 404.1527(c)(2)).   When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason."   Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).

In choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence.  Id. at 317 (citations omitted).  An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion.  Id.  An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. at 318 (citation omitted).

Here, Dr. Persing, plaintiff's primary care physician, stated that plaintiff has a history of alcohol abuse, peripheral edema, neuropathy and muscle pain.  (R. at 75, 234).  Dr. Persing opined that plaintiff's "chronic pain, difficulty walking, and chronic numbness and tingling due to his

18

peripheral neuropathy" precludes him from doing any type of work activity, including any sedentary work.  (R. at 388).  The ALJ determined, however, that Dr. Persing's opinion was inconsistent with the objective medical evidence.

In contrast to Dr. Persing's opinion, R. Craig Nielsen, M.D. (hereinafter "Dr. Nielsen"), the state agency physician who conducted a consultative examination of plaintiff on June 8, 2010, found that plaintiff had very few functional limitations.  (R. at 319).  In fact, Dr. Nielsen opined that plaintiff had no limitations at all in lifting, carrying, standing, walking, or sitting.  (Id.)  Dr. Nielsen also made the following findings: (1) plaintiff's left knee had no instability, effusion, pain, or decreased range of motion; (2) plaintiff had a "quite normal" gait; and (3) plaintiff was able to squat and un-squat, and he sat, stood, and walked normally.  (R. at 313).  As previously discussed, although a left knee MRI demonstrated limited knee damage, Dr. Charles Cole, who treated plaintiff for three years, recommended against a knee replacement, and found that plaintiff's knee had excellent motion.  Dr. Cole also determined that plaintiff was not in enough pain to warrant a knee replacement.  (R. at 352).  Dr. Reish further opined that plaintiff's knee should be treated with medication injections rather than replacement surgery.  (R. at 400).

Additionally, Vinaykant Shah, M.D. (hereinafter "Dr. Shah") conducted a physical RFC assessment of plaintiff on June 29, 2010.  In a report, Dr. Shah explains that plaintiff would be able to lift up to 50 pounds

occasionally and 25 pounds frequently, and could stand/walk for up to six hours in an eight-hour day. (R. at 328). Given the contrast between these opinions and Dr. Persing's conclusion that plaintiff could not even perform sedentary work, the ALJ reasonably concluded that plaintiff's functional limitations fell somewhere in between.

Significantly, the ALJ noted that Dr. Persing did not support his opinion with explanations containing objective findings. (R. at 76). Dr. Persing merely offered the conclusion that plaintiff was unable to work and marked the "yes" box on his questionnaire evaluation form, indicating that the severity level of plaintiff's impairments met the requirements under Listing 1.02 for major dysfunction of a joint due to any cause. (R. at 388, 396-99). These conclusions, however, are reserved to the Commissioner. See 20 C.F.R. § 404.1527(d); Johnson v. Commissioner, 529 F.3d 198, 203 n.2 (3d Cir. 2008).

Moreover, Dr. Persing did not offer any specific limitations, but instead generally stated that plaintiff had "weakness" in his knees, "difficulty" walking, and could not walk "very far." (R. at 396-97). Without more, it was reasonable for the ALJ to afford limited weight to Dr. Persing's vague conclusions regarding plaintiff's limitations. 20 C.F.R. § 404.1527(d)(2); Johnson v. Commissioner, 529 F.3d 198, 202 (3d Cir. 2008) (stating that a treating physician's opinion cannot receive controlling weight where the opinion is not "well supported by medically acceptable clinical or laboratory diagnostic techniques" or is "inconsistent with the other substantial

evidence" in the record).  As such, it was not improper for the ALJ to reject Dr. Persing's opinion.

## B. Objective Medical Evidence

Second, plaintiff argues that his physical and mental impairments preclude him from performing any type of gainful employment including sedentary work and that the ALJ failed to point to any medical evidence to support her finding.  Plaintiff alleges that the ALJ engaged in a lay analysis of the medical evidence to support her decision and disregarded evidence of record that was contrary to the ALJ's decision.  Specifically, plaintiff contends that the physical limitations listed in the ALJ's RFC assessment appear nowhere in the medical records and are derived from the ALJ's lay opinion.  Plaintiff's argument misconstrues the evidence and the ALJ's role as fact-finder.

The RFC is an administrative determination for the ALJ, not a doctor. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); 20 C.F.R. § 404.1527(e)(2).  Thus, while an RFC must be supported by the medical opinions and the evidence, the ALJ need not rely on any single medical opinion in formulating the RFC.  Id.; see also Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011).

In the present matter, the ALJ's assessment of plaintiff's physical and mental RFC is supported by objective medical opinions and evidence.  With respect to his physical RFC, the ALJ found that plaintiff was capable of

standing or walking only two hours in an eight hour day.  (R. at 73).  The medical records, including Dr. Nielsen's evaluative report and the medical reports from plaintiff's examination at Sun Orthopaedic Group, Inc., indicate that plaintiff had normal grip strength and could lift normally.  (R. at 318, 357, 369).  Plaintiff also testified that he could lift up to 40 pounds.  (R. at 43).

As to plaintiff's mental abilities, the ALJ found that plaintiff retained the RFC to perform simple, routine tasks of a low-stress nature, defined as only occasional decision making and occasional changes in the work setting, with no interaction with the general public and only occasional interaction with co-workers.  (R. at 73).  A state agency physician, Kerry Brace, Psy.D. (hereinafter "Dr. Brace"), conducted a comprehensive consultative evaluation of plaintiff's medical records and found that in spite of plaintiff's mental impairments, he was capable of performing a range of simple, routine, repetitive tasks in a stable environment.  (R. at 288-304).  The ALJ found that Dr. Brace's conclusion was consistent with the other substantial evidence of record.  (R. at 76).  Siginficantly, the ALJ found that Dr. Brace's opinion was also consistent with plaintiff's own testimony at the hearing that he had not been referred for counseling or received psychological care for his mental impairments and that the medication he received for his depression was effective.  (R. at 41, 45).  As such, the ALJ assigned great weight to Dr. Brace's opinion.  (R. at 76).

In sum, the medical opinions and evidence support the ALJ's

determination that plaintiff is capable of performing a narrow range of unskilled, sedentary work. The ALJ did not conduct a lay analysis of the medical evidence, but instead appropriately weighed the substantial expert medical opinions and evidence and properly assessed plaintiff's RFC. Ergo, the court will overrule plaintiff's objection and adopt the R&R regarding the ALJ's residual functional capacity assessment.

### 3. Plaintiff's Severe Impairments Do Not Meet a Listed Impairment[17]

The Magistrate Judge also recommends affirming the ALJ's decision at step three of the sequential evaluation process.  At step three, the ALJ first determined that plaintiff's mental and physical impairments were severe.  (R. at 71).  The ALJ, however, determined that plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments.  (R. at 72).  Plaintiff argues that the ALJ improperly analyzed his impairments with regard to each of the Listings.  After careful review, we agree with the Magistrate Judge.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience.  Bowen v. Yuckert, 482 U.S. 137, 153 (1987); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir.  2000).  See also 20 C.F.R. §§ 404.1525(a). To qualify, a claimant must demonstrate that his or her impairment (or

---

[17] This section addresses plaintiff's third through seventh objections.

combination of impairments) either "matches" a listing or is "equivalent" to a listing. <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-531 (1990). An impairment "matches" a listing only if it satisfies *all* of the relevant medical criteria. <u>Id</u>. at 530. An impairment is "equivalent" to a listed impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar listing. <u>Id</u>. at 531.

In the instant case, plaintiff contends that his impairments are equivalent to the following Listings: 12.00 - mental impairments; 1.00 - musculoskeletal system impairments; and 11.14 - neuropathy. We will address each Listing in turn.

### A. Listing 12.00 - Mental Impairments

The ALJ found that plaintiff's mental impairments, including mood disorder, depressive disorder, antisocial and dependent personality disorder, post traumatic stress disorder, and attention deficit hyperactivity disorder, were severe. (R. at 71). The ALJ, however, determined that the severity of plaintiff's mental impairments did not meet or medically equal the listing criteria of Section 12.04(B). (R. at 72). In making this finding, the ALJ concluded that plaintiff failed to meet his burden to "present medical findings equal in severity to all the criteria" of a listed impairment. <u>Zebley</u>, 493 U.S. at 531. Specifically, the ALJ stated that plaintiff's impairments did not individually or in combination meet or medically equal the paragraph B criteria of the listings for "Affective Disorder" under section 12.04. (R. at 72-73); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B) (hereinafter "section

24

12.04(B)").

To satisfy the paragraph B criteria, plaintiff must establish that his mental impairments result in at least two of the following: "(1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration."[18]  Section 12.04(B).  To find a marked impairment, the ALJ must examine the nature and overall degree of interference with function.  20 C.F.R. pt 404, subpt. P, app. 1, § 12.00(c).  In making the determination of whether plaintiff's ailments amount to "marked" impairments, the ALJ examined the objective medical evidence in conjunction with plaintiff's testimony.

Here, Dr. Brace determined that plaintiff had moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation.  (R. at 302).  Dr. Brace concluded that plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite his mental limitations.  (R. at  291).  The ALJ found that Dr. Brace's psychological conclusion was consistent with the other substantial evidence of record including plaintiff's

---

[18]  A "marked" limitation means more than moderate but less than extreme. "Repeated episodes of decompensation, each of extended duration" means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  (R. at 16).

own testimony.  (R. at 45, 76).

    A review of the record reveals that the ALJ's conclusion is supported by substantial evidence.  Plaintiff reported that he is able to perform household chores and provide for "all responsibilities" for his daughter and multiple pets, including preparing meals, and providing clothes and money. (R. at 72, 156-57).  Plaintiff is able to take care of his own personal care including bathing, grooming, and dressing himself.  (R. at 42).

    Plaintiff also does his own shopping but prefers to stay at home because public crowds increase his anxiety.  (R. at 43, 50, 52).  Plaintiff reported, however, that he frequently has dinner with his neighbor and his parents, speaks on the phone with his neighbor every day, attends drug and alcohol outpatient meetings two (2) hours a week and Alcoholics Anonymous meetings five (5) times per week.  (R. at 160).

    Upon consideration of the above evidence, the ALJ found that plaintiff had no restrictions in activities of daily living.  (R. at 72).  Additionally, the ALJ determined that plaintiff has only mild difficulties in social functioning due to his difficulty with socializing and his self-reported anxiety in public crowds.  (Id.)  With regard to concentration, persistence or pace, the ALJ assessed that plaintiff has moderate difficulties based on his testimony as to his short-term memory loss and difficulty with concentration.  (Id.)  Stated differently, the ALJ determined that plaintiff's mental impairments did not cause at least two "marked" limitations.

    Accordingly, we will find that substantial evidence supports the ALJ's

determination that the severity level of plaintiff's mental impairments failed to satisfy the paragraph B criteria of section 12.04.  We will, therefore, overrule plaintiff's objection on this issue.

### B. Section 1.00- Musculoskeletal System Impairments

The ALJ additionally found that plaintiff's physical impairments, including degenerative disc disease of the lumbar spine; degenerative joint disease of bilateral knees; PVD bilateral lower extremities, and peripheral neuropathy were severe but did not singly or in combination meet or medically equal the listing criteria of Section 1.00 et seq.  Plaintiff argues that the report of his treating physician, Dr. Persing, demonstrates that plaintiff's limitations met the severity level required under  20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 major dysfunction of a joint(s) due to any cause (hereinafter "Listing 1.02").  Because plaintiff's arguments regarding Listing 1.02 are almost identical to his RFC assessment contentions, the analysis given above is equally applicable here.  Ergo, the court will adopt the Magistrate Judge's recommendation regarding plaintiff's failure to meet the requirements set forth in Listing 1.02.

### C. Section 11.14 - Neuropathy

Similarly, the ALJ found that plaintiff's impairments did not meet Listing 11.14 because he did not have "disorganization of motor function as described in 11:04B." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.14 (hereinafter "Listing 11.14").  Plaintiff again argues that the ALJ gave insufficient weight to Dr. Persing's conclusion that plaintiff met the

requirements of Listing 11.14.  As stated above, however, the decision as to whether plaintiff meets a Listing, as well as opinions of disability, are reserved to the Commissioner.  Moreover, substantial evidence of record supports the ALJ's conclusion.

Plaintiff contends that his neurological impairments meet the requirements of Listing 11.14 because Dr. Persing found that plaintiff had "weakness in his left hand and twitching with neuropathy and control problems with the left hand, and weakness in both hands and loss of control of both hands."  (R. at 376).  Listing 11.14, however, requires that "disorganization of motor function" must be "significant and persistent," be present in two extremities, and result in "sustained disturbance of gross and dexterous movements, or gait and station."  20 C.F.R. pt. 404, subpt. P, app. 1, § 11.04B.  "[T]o properly assess 11.14, an ALJ must analyze the degree of functional limitation in the [plaintiff's] fingers, hands, and arms." Jennings v. Astrue, 2009 WL 7387721, *19 (E.D. Pa., Nov. 30, 2009).

In the instant case, plaintiff did not have sustained disturbance of movement in his fingers, hands or arms.  Rather, plaintiff was able to walk normally, grip, grasp and lift objects up to 40 pounds normally, as well as maintain his daily activities without limitation.  (R. at 42, 75, 156-57, 274-75, 313, 318, 357, 369).  Therefore, we will find that substantial evidence supports that ALJ's decision that plaintiff's neurological impairments did not meet the requirements of Listing 11.14.

**4. The Magistrate Judge Properly Considered the Opinions of Dr. Hauck and Dr. Sallade[19]**

Plaintiff next argues that the ALJ erred in not affording greater weight to the opinions of consulting examining physicians Dr. William Hauck and Dr. Jacqueline Sallade, regarding plaintiff's mental health issues.  Dr. Hauck opined that plaintiff was disabled due to various mental impairments including major depressive disorder, posttraumatic stress disorder, anti-social personality disorder and dependant personality disorder.  (R. at 75, 406).  Dr. Sallade concluded, however, that plaintiff's mental status was within normal limits, his concentration was above average, his memory was average, and he could understand and remember simple instructions without difficulty.  (R. at 75, 275-77).  In choosing to afford limited weight to their conclusions, the ALJ noted that neither Dr. Sallade nor Dr. Hauck is a treating physician and that their examinations and opinions are not based upon any longitudinal treatment relationship with plaintiff.  (R. at 76).  Rather, each doctor relied exclusively on plaintiff's self-reporting.  (Id.)

Moreover, the ALJ noted that Dr. Sallade's findings were contrary to Dr. Hauck's.  (Id.)  In fact, Dr. Sallade's report provides additional support for the ALJ's determination regarding plaintiff's mental impairments.  Dr. Sallade found that plaintiff's speech was normal; his stream of thought was normally productive; his intellectual processes were within the average to superior range; his abstract thinking was average; his store of information

---

[19] This section addresses plaintiff's third, fourth and eleventh objections.

was above average to superior; his immediate retention and recall was average; his insight was good; and his test judgment was superior.  (R. at 275-76).  The ALJ, however, chose to afford limited weight to Dr. Sallade's opinion because plaintiff only saw Dr. Sallade on a single occasion and Dr. Sallade did not set forth any actual explanations containing objective findings or diagnostic test results.  (R. at 76).

Next, the ALJ chose to reject Dr. Hauck's opinion that plaintiff is incapable of sustaining gainful employment due to his mental impairments.  (R. at 75, 76).  The ALJ first noted that plaintiff also only saw Dr. Hauck on one occasion at the behest of his attorney and that Hauck, too, failed to set forth any actual explanations containing objective findings or diagnostic test results.  (R. at 76).  Significantly, the ALJ found that in addition to being inconsistent with Dr. Sallade's findings, Dr. Hauck's opinion was not supported by any other examination findings in the entire record.  (Id.)  As such, the ALJ afforded little weight to the opinions of both Dr. Sallade and Dr. Hauck.  (Id.)

Accordingly, we will affirm the Magistrate Judge's finding that the ALJ properly evaluated the relevant medical evidence and appropriately afforded little weight to the opinions of Drs. Hauck and Sallade.

### 6. ALJ's Hypothetical[20]

Finally, plaintiff argues that the ALJ erred in the fifth and final step of the sequential evaluation process by posing an improper hypothetical

---

[20]   This section addresses plaintiff's thirteenth objection.

question to the Vocational Expert at the hearing.  The fifth and final step of
the sequential evaluation process requires an analysis of whether plaintiff,
based on his age, experience, education, and residual functional capacity
and limitations, can perform any other work in the national economy. See
Plummer, 186 F.3d at 428; Burnett v. Comm. of SSA, 220 F.3d 112, 126 (3d
Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the
plaintiff is capable of performing other available work in order to deny a
claim of disability.  20 C.F.R. § 404.1520(f); Plummer, 186 F.3d at 428.  In
making a disability determination, the ALJ must analyze the cumulative
effect of all of the plaintiff's impairments. 20 C.F.R. § 404.1523; Plummer,
supra.

A hypothetical question must include all of a claimant's impairments
which are supported by the record; one which omits limitations is defective
and the answer thereto cannot constitute substantial evidence to support
denial of a claim.  Ramirez v. Barnhart, 372 F.3d 546, 553-55 (3d Cir.
2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987);
Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  However, "[w]e do
not require an ALJ to submit to the vocational expert every impairment
alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.
2005) (emphasis in original).

Plaintiff argues that the ALJ erred in failing to consider the vocational
expert's response to the hypothetical questions posed by plaintiff's attorney.
At the hearing, plaintiff's attorney asked the vocational expert if a person

with all of the impairments that plaintiff alleged he suffers from would be able to perform any work, including at the sedentary level.  (R. at 61).  In response, the vocational expert responded that there was no work for such a person at any exertional level, including plaintiff's past relevant work.  (Id.)

An ALJ must give weight to a claimant's subjective testimony of his inability to perform even light or sedentary work, but only when the claimant's testimony is supported by competent medical evidence. Schaudeck v. Commissioner of Social Security, 181 F. 3d 429, 433 (3d Cir. 1999).  In the instant case, the ALJ found that the medical evidence, including the reports of plaintiff's treating doctors, the objective medical tests, as well as plaintiff's own testimony, established that plaintiff had impairments that could cause his symptoms, but not to the extent that plaintiff alleged.  (R. at 74).  Thus, as discussed above, the ALJ found that the plaintiff was not fully credible regarding the severity of the symptoms he claimed and the level of incapacity he alleged.

At the hearing, to determine the extent to which plaintiff's limitations erode the occupational base of unskilled work at all exertional levels, the ALJ  presented an impartial vocational expert with a hypothetical question and asked whether jobs exist in the national economy for a hypothetical individual of plaintiff's age, education, work experience, and residual functional capacity.  (R. at 57-58, 77-78).  The ALJ included in his hypothetical that such an individual be limited to unskilled occupations that involve only light work that is limited to simple, routine tasks that are low

stress in nature, involve only occasional decision making, changes in the work setting, and interaction with co-workers and no interaction with the public.  (R. at 57-58).  Further, the occupations must include the following limitations: (1) a sit/stand option at the will and direction of the individual; (2) a bilateral lower extremity push/pull limitation that would involve only occasional climbing, balancing and stooping but never on ladders, never kneeling, crouching or crawling; (3) a bilateral overhead reach limitation that would limit the individual to only occasional overhead reaching; and (4) a need to avoid extreme temperatures, humidity, noise, vibration, and hazards.  (Id.)

In response, the vocational expert testified that, given all of the hypothetical factors, the individual would be able to perform the requirements of the following unskilled occupations: (1) assembler of small parts at the sedentary exertional level, an unskilled position with 400-500 jobs available regionally; (2) sorter/clerk at the sedentary exertional level, an unskilled position with 100-200 jobs available regionally; and (3) a surveillance system monitor at the sedentary exertional level, an unskilled position with 100 jobs available regionally.  (R. at 58).

Based on our above discussion, we find that the hypothetical question that the ALJ posed to the vocational expert properly included all of plaintiff's impairments that were supported by the record as well as consistent with plaintiff's RFC.  The ALJ was not required to ask the vocational expert hypothetical questions that included impairments and limitations that plaintiff

alleged he suffers from but were not supported by the record.  As such, we find that the Magistrate Judge properly determined that the ALJ's conclusion that plaintiff was capable of performing work that exists within the national economy was supported by substantial evidence.

**Conclusion**

For the reasons stated above, the court will overrule plaintiff's objections and adopt the R&R denying plaintiff's disability insurance benefits appeal.  Based on our review of the administrative record and the reasons stated above, we find that the decision of the Commissioner that plaintiff could engage in a limited range of unskilled, sedentary work at light to medium exertion levels is supported by substantial evidence.  We will, therefore, affirm the decision of the Commissioner pursuant to 42 U.S.C. 405(g).  An appropriate order follows.

**BY THE COURT:**

Date: <u>April 24, 2014</u>          **s/ James M. Munley**
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**